UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CSSS, L.P., d/b/a CENTRAL VALLEY SHIPPERS,<br><br>    Appellant,<br><br>    v.<br><br>BANK OF MONTREAL, as Administrative Agent, successor by Assignment to Debtors SK Foods, L.P., and RHM Industrial Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co.,<br><br>    Defendants. | No.  CIV. S-13-522 LKK<br><br>**ORDER** |

On February 13, 2013, the Bankruptcy Judge granted the Bank of Montreal's ("BMO") un-opposed motion for summary judgment against CSSS, LLP, dba CVS ("CVS").  CVS appeals.

For the reasons that follow, the court will affirm the bankruptcy court's order.

**I.   BACKGROUND**

On August 21, 2009, the Trustee in the SK Foods, Inc. bankruptcy case filed an adversary proceeding against CSSS, LLP

1

dba Central Valley Shippers ("CVS") "to avoid and recover" a "fraudulent conveyance" of the "drum line" from SK Foods, Inc. to CVS. Appellant's Excerpts of Record ("ER") (ECF No. 10-1) 1.[1] The Drum Line transfer was evidenced by sale documents dated December 1, 2008, five months before SK Foods filed for bankruptcy. ER 2 ¶¶ 9 & 14. The Complaint alleges that SK Foods transferred the "Drum Line" to CVS in exchange for a worthless, unsecured $350,000 promissory note. There was no down payment made in connection with the note, and no payments of any kind were ever made on the note.

On September 23, 2009, CVS filed its Answer to the adversary Complaint. BMO's Supplemental Excerpts of Record ("BMO SER") 12 (ECF No. 11-3). On April 14, 2011, the Bank of Montreal ("BMO") was substituted in for the Trustee as plaintiff. ER 70.

**A.   The CVS Lawyers.**

CVS failed to oppose the summary judgment motion because, it asserts, it was unrepresented by counsel and therefore prohibited from filing papers in court. The court therefore begins with a brief look at the lawyers representing CVS. This look is relevant because in rendering summary judgment, the Bankruptcy Court was plainly exasperated by the "revolving door" of CVS lawyers in and out of his courtroom.

- On September 23, 2009, the date CVS filed its Answer, it was represented by Larry J. Lichtenegger, Esq. (The Law Office of Larry J. Lichtenegger). See BMO SER 12

---

[1] Sharp v. CSSS (In re SK Foods, L.P.), Adv. Proc. 9-2543 (Bankr. E.D. Cal.) (Bardwill, Bankr. J.).

2

(CVS Answer).

- On May 19, 2010, Andrea M. Miller, Esq. (Negeley Meredith & Miller, Inc.), replaced Lichtenegger as CVS's lawyer.  Bankr. ECF No. 134.
- On August 30, 2011, Kelly A. Woodruff (Farella Braun + Martel LLP), replaced Miller as CVS's lawyer.
- On September 24, 2012, Holly L. Hostrop, Esq. (Law Office of Holly L. Hostrop), replaced Woodruff as CVS's lawyer.[2]

"[S]taring in early December 2012," Hostrop provided written notice to CVS that she planned to withdraw as its counsel.  BMO SER 556 ¶ 4 (Declaration of Holly L. Hostrop dated January 2, 2013).  On January 2, 2013, Hostrop filed her motion to withdraw as counsel for CVS.  ER 108.[3]  The withdrawal motion was noticed for a hearing on January 16, 2013.[4]  On January 8, 2013, BMO

---

[2] In fact, the move from Woodruff to Hostrop was not quite that simple or clear-cut.  On April 11, 2012, Woodruff filed a motion to withdraw as counsel for a host of Salyer entities, and the motion was granted on May 11, 2012.  Bankr. ECF Nos. 339 (motion) & 352 (order).  CVS was not among the Salyer entities listed in the withdrawal motion.  However, this appears to have been an oversight.  The Bankruptcy Court and all parties apparently believed that Woodruff withdrew as counsel for CVS.

[3] Like Woodruff before her, Hostrop inadvertently omitted CVS from the list of entities she would no longer represent.  Id.  However, she clarified that this was an oversight and that her motion included CVS.  The Bankruptcy Court order granting the withdrawal listed CVS among the entities no longer being represented by Hostrop.  Bankr. ECF No. 479.

[4] The motion papers designate February 13, 2013 as the hearing date, but a successful ex parte Application To Shorten Time moved the hearing date to January 16, 2013.  See Bankr. ECF No. 461 (Order Shortening Time).

3

filed its response to the withdrawal motion.  Bankr. ECF No. 462. BMO did not object to the withdrawal, but noting that CVS would be unable to file pleadings if its counsel withdrew without substituting in new counsel, BMO requested that no delay should result from the withdrawal.

**B.   The Summary Judgment Motion.**

On January 11, 2013 BMO filed its motion for summary judgment against CVS.  ER 118.  On that date, CVS was still represented by counsel, namely, Ms. Hostrop.  The motion advised CVS that an opposition was due on January 30, 2013, pursuant to the Bankruptcy Court's local rules.  ECF No. 10 at 12; Bankr. ECF No. 469 (notice of motion).  Even though the opposition to the summary judgment motion would be due <u>after</u> counsel had withdrawn, CVS (which, to repeat, was then represented by counsel), did nothing to protect its position.  Indeed, during the seven (7) days between BMO's notice of the summary judgment motion, and the order granting Hostrop's motion to withdraw, CVS – while still represented by Hostrop – took no action to protect its position, seek an extension or a continuance or to otherwise address the pending summary judgment motion.

On January 17, 2013, the Bankruptcy Court granted Hostrop's motion to withdraw as counsel to CVS.  ER 146.  No other attorney was substituted in to replace Hostrop.

CVS's January 30, 2013 deadline for filing an opposition to the motion for summary judgment came and went, with CVS taking no action.  In fact, CVS maintained silence until the date of the summary judgment hearing, Wednesday, February 13, 2013.  On that date, Kimberly A. Wright, Esq. (Law Office of Kimberly A. Wright,

4

Esq.), made an appearance as CVS's new attorney. ER 162. The notice made no reference to the summary judgment motion scheduled for that day, made no request for an extension or a stay for that hearing, made no reference to CVS's failure to respond to the summary judgment motion, and proffered no evidence that might have precluded the summary judgment. Nor did Wright make any concurrent filing addressing the pending motion.

Instead, Wright simply appeared at the summary judgment hearing that day. ER 211 (transcript of proceedings). Judge Bardwill asked whether CVS "consents or takes issue with the Court's tentative." Id. Wright responded, "I'd like to respond to it." Id. She never got the chance to respond however, as Judge Bardwill heard BMO's counsel's views on Wright's tardy appearance in the case, and then stated:

> I'm inclined not to hear argument. Miss Wright, whether you're kind of in the 11th hour. There has been a revolving door of people in and out of the case. It's been to the detriment of the moving party in this case. There was no opposition filed – no opposition whatsoever filed to the motion for summary. At this time, I'm going to adopt the tentative as the final and that will be done by a minute order. The motion will be granted.

ER 212.

The Bankruptcy Court thereupon granted BMO's motion for summary judgment, adopted the court's reasoned tentative order as the final order, entered judgment for BMO, and denied as moot BMO's motion to strike CVS's answer (which was requested so that a default judgment could be entered). ER 164 (minutes), 169 (civil minute order), 170 (judgment), 171 (notice of entry of judgment).

5

**II.   ISSUES ON APPEAL**

1.   Whether the Bankruptcy Court abused its discretion by not granting an extension of time for CVS to oppose the summary judgment motion and not finding that CVS's failure to oppose the motion was due to excusable neglect.

2.   Whether the Bankruptcy Court erred in granting summary judgment to BMO.

3.   Whether the Bankruptcy Court erred in awarding BMO a $1.5 million judgment against CVS.

**III. STANDARDS**

**A.   Standard of Review.**

**1.   Summary judgment.**

When reviewing the factual findings and legal conclusions of the bankruptcy court, the district court applies the same standard of review that the Court of Appeals uses when reviewing bankruptcy court findings and conclusions. Neilson v. U.S. (In re Olshan), 356 F.3d 1078, 1083 (9th Cir. 2004) (in reviewing bankruptcy court decisions, the Court of Appeals uses "the same standard of review applied by the district court"). Accordingly, like the Court of Appeals, this court

> review[s] de novo the bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code. We review the bankruptcy court's factual findings for clear error. Under this standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge.

Rains v. Flinn (In re Rains), 428 F.3d 893, 900 (9th Cir. 2005); Fed. R. Bankr. P. 8013 (bankruptcy court's findings of fact, on

6

appeal to the district court, "shall not be set aside unless clearly erroneous").

### 2. Continuance.

> The denial of a request for a continuance of summary judgment pending further discovery is reviewed for an abuse of discretion. … A district court abuses its discretion only if the party requesting a continuance can show that allowing additional discovery would have precluded summary judgment.

Michelman v. Lincoln Nat. Life Ins. Co., 685 F.3d 887, 892 (9th Cir. 2012).

### B. Summary Judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that the movant is 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (en banc) (same), cert. denied, 132 S. Ct. 1566 (2012).

1     Under summary judgment practice, the moving party bears the
2  initial responsibility of informing the district court of the
3  basis for its motion, and "citing to particular parts of the
4  materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show
5  "that a fact cannot be ... disputed." Fed. R. Civ. P. 56(c)(1);
6  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re
7  Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir.
8  2010) ("The moving party initially bears the burden of proving
9  the absence of a genuine issue of material fact") (citing Celotex
10 v. Catrett, 477 U.S. 317, 323 (1986)).
11    A wrinkle arises when the non-moving party will bear the
12 burden of proof at trial. In that case, "the moving party need
13 only prove that there is an absence of evidence to support the
14 non-moving party's case." Oracle Corp., 627 F.3d at 387.
15    If the moving party meets its initial responsibility, the
16 burden then shifts to the non-moving party to establish the
17 existence of a genuine issue of material fact. Matsushita Elec.
18 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);
19 Oracle Corp., 627 F.3d at 387 (where the moving party meets its
20 burden, "the burden then shifts to the non-moving party to
21 designate specific facts demonstrating the existence of genuine
22 issues for trial"). In doing so, the non-moving party may not
23 rely upon the denials of its pleadings, but must tender evidence
24 of specific facts in the form of affidavits and/or other
25 admissible materials in support of its contention that the
26 dispute exists. Fed. R. Civ. P. 56(c)(1)(A).
27         "In evaluating the evidence to determine whether there
28 is a genuine issue of fact," the court draws "all reasonable

8

inferences supported by the evidence in favor of the non-moving party." Walls, 653 F.3d at 966.  Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

### IV.   ANALYSIS

**A.   Extension.**

CVS complains that at the summary judgment hearing, the Bankruptcy Court "refused to … entertain a request for continuance."  ECF No. 10 at 17.  However, acknowledging that in fact no such "request" was ever made in the Bankruptcy Court, CVS argues that the court "should have sua sponte continued the hearing to allow CVS' new counsel an opportunity to respond to the MSJ on the merits."  ECF No. 10 at 18.  In summary, according to CVS, the Bankruptcy Court "abused its discretion" by not hearing argument, and by not granting a continuance sua sponte.

Unsurprisingly, CVS cites no authority for these propositions.  CVS did not file a request for a continuance (neither when it learned that its former counsel was withdrawing, nor after it hired new counsel), did not ask for a continuance at the hearing, did not seek leave to file a late opposition, and did not seek reconsideration on the grounds that a continuance

9

was necessary.  In short, CVS did nothing to protect its position, other than show up, apparently unprepared, at the hearing, and then file this appeal.

The question for this court is whether the Bankruptcy Court abused its discretion.  This court concludes that it did not.  CVS's argument is premised upon its assertion that it "had no ability" to respond to the summary judgment motion because it was a corporation without legal counsel.  ECF No. 10 at 12 ("As Ms. Hostrop had recently moved to withdraw as counsel, Defendant was without counsel and was unable to prepare or file an opposition to the MSJ by the deadline") & 17 ("When the MSJ was pending and CVS had not yet retained an attorney for this action, it had no ability to file papers or appear in court").

CVS's premise is false.  At the time the summary judgment motion was filed, January 11, 2013, CVS <u>was</u> represented by counsel.  Counsel's motion to withdraw as counsel did not end her representation of CVS, only the court's order could do that.  See E.D. Cal. R. 182(d) ("The authority and duty of the attorney of record shall continue until relieved by order of the Court"); Cal. Prof. Conduct R. 3-700(A)(1) ("If permission for termination of employment is required by the rules of a tribunal, a member shall not withdraw from employment in a proceeding before that tribunal without its permission").

Therefore, contrary to its assertion, CVS was able to respond to the summary motion.  At a minimum, CVS, through its counsel, could have requested an extension of the opposition deadline and/or a continuance of the hearing to give it an

10

1  opportunity to obtain replacement counsel.[5]  CVS did not do so.
2  It did nothing.[6]

3      CVS obtained replacement counsel – Ms. Wright – over the
4  weekend of February 8-10, 2013.  <u>See</u> ECF No. 10 at 17.  At that
5  point, CVS was in default on the summary judgment motion, not
6  having filed an opposition or a Statement of Non-Opposition.
7  Over the next two full business days before the February 13, 2013
8  hearing, CVS again did nothing.  Although it was then represented
9  by new counsel, CVS still did not seek a continuance from the
10 court or request one from opposing counsel.  Nor did CVS seek
11 leave to file a late opposition, even though such a procedure is
12 specifically permitted under the Bankruptcy Rules.  <u>See</u> Fed. R.
13 Bankr. P. 9006(b)(1)(2) (enlargement of time after the deadline
14 has passed, if "excusable neglect" is shown).

15     Instead, CVS's new attorney waited until the day of the
16 hearing to file her notice of appearance.  She did not, even

---

[5] The court notes that CVS does not assert, nor offer any evidence, that departing counsel abandoned it with a summary judgment motion pending against it.  This court will not simply assume that a member of the bar, in good standing, has abandoned her client, without so much as an allegation or a shred of evidence pointing to such a possibility.  Accordingly, this court is left with no explanation for why counsel withdrew without taking any action to protect her client from the pending summary judgment motion.

[6] Of course, there is no guarantee that the Bankruptcy Court would have granted a requested extension or continuance.  However, the denial of such an apparently reasonable request, had it been made, in light of the impending departure of CVS's attorney at the same time an opposition to the summary judgment motion was due, would be viewed in a very different light on appeal than CVS's failure to take any action to protect its position.

1  then, file a request for a continuance, nor a request to file a
2  late opposition, nor did she file anything to show that the
3  continuance would have made a difference in the outcome of the
4  summary judgment motion.  She simply showed up at the hearing,
5  and found herself cut off by the judge after she stated that she
6  wanted to "respond" to the summary judgment motion.

7      CVS asserts that the bankruptcy court was not permitted to
8  grant summary judgment "'simply because a party fails to file an
9  opposition or violates a local rule,'" quoting Ahanchian v. Xenon
10 Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010).  That is the
11 rule in the Ninth Circuit, however that is not what happened
12 here.

13     In Ahanchian, the plaintiff faced an "unreasonably strained
14 deadline[]" for responding to a summary judgment motion of only
15 eight (8) days, three of them being over the Labor Day weekend,
16 and during which plaintiff's lead counsel was travelling out of
17 town.  Ahanchian, 624 F.3d at 1257.  CVS does not assert that the
18 response time was unreasonably short here.  The Ahanchian
19 plaintiff asked defendant to stipulate to a one-week extension of
20 the opposition due date and a corresponding one-week continuance
21 of the hearing date, but defendant refused.  Id.  CVS does not
22 assert that it sought a stipulated extension or continuance here.
23 The very next day, the Ahanchian plaintiff filed an ex parte
24 application, pursuant to the local rules, seeking the one-week
25 extension, and reciting good cause for the request.[7]  Id.  CVS

---

[7] "(1)defendants had waited until the last day to file their
motions, choosing to file four days before the Labor Day weekend,
and with knowledge of pending depositions; (2) the accompanying
motions and exhibits amounted to 1,000 pages of materials; (3)

12

made no application for an extension or a continuance of the hearing here.  Ultimately, the Ahanchian plaintiff filed its opposition late, together with an application for permission to make the late filing.[8]  Id.  CVS never filed or offered an opposition here, and did not seek to file a late opposition.[9]

In short, CVS gave the Bankruptcy Court no basis for continuing the summary judgment hearing, or permitting CVS to file a late opposition.  There is no basis for finding that the

---

Ahanchian's lead counsel had left the state on August 25 on a prescheduled trip and would not be returning until September 2 [the day the opposition was due]; and (4) Ahanchian, who was needed to respond to the motion, was also out of town over Labor Day weekend." Ahanchian, 624 F.3d at 1257.

[8] Despite the time pressure, plaintiff in Ahanchian tried to file on time.  The late filing was the result of a miscalculation on the part of plaintiff's counsel, compounded by a technological problem beyond his control.  Ahanchian, 624 F.3d at 1257 n.4 & 1262.

[9] CVS's new counsel cannot claim that she was unaware of her right to seek leave to file a late opposition.  In this very adversary proceeding, counsel filed a motion seeking exactly this relief on behalf "respondents" F. Scott Salyer and Monterey Peninsula Farming, LLC.  Bankr. ECF No. 523.  There, she made exactly the arguments to the Bankruptcy Court that she now makes directly to this court:

> Pursuant to Bankruptcy Rule 9006(b)(2), Respondents, Frederick Scott Salyer and Monterey Peninsula Farming, LLC, ("Respondents") hereby move for leave to file a late response to Plaintiff's Request for Entry of Default Judgment.  This Motion is made on the grounds that Respondents' were unrepresented by counsel when Plaintiff, Bank of Montreal, filed its motion requesting entry of default judgment.

ECF No. 523 at 1-2.

Bankruptcy Court abused its discretion in this matter.

### B. The Grant of Summary Judgment.

On appeal, CVS asserts that somewhere in the record before the Bankruptcy Court, there is evidence creating genuine issues of material fact, thus precluding summary judgment. CVS again quotes Ahanchian here, asserting that the bankruptcy court "must 'analyze the record to determine whether any disputed material fact [is] present.'" However, CVS identifies no evidence in the record before the Bankruptcy Court that puts any material fact genuinely in dispute.

In order to prevail on its summary judgment motion, BMO was required to show: (1) SK Foods transferred the Drum Line to CVS within two years before the date of the bankruptcy petition; (2) SK Foods "received less than a reasonably equivalent value in exchange" for the Drum Line; and (3) SK Foods was insolvent on the date of the transfer, or became insolvent by the transfer. 11 U.S.C. § 548(a). CVS does not dispute that the Drum Line was transferred to CVS within two years of the bankruptcy petition date in exchange for the $350,000 unsecured promissory note.

#### 1. Reasonably equivalent value.

BMO established, through the Declaration of Shondale Seymour, CFO of SK Foods, that the $350,000 unsecured promissory note from CVS was worthless. BMO SER 424-25 (Seymour Decl.) (ECF No. 11-16) ¶¶ 11 & 12. Seymour testified that CVS was unable to make the interest payments on the note – the only payments due for the first five years of the note – nor the $350,000 principal, when it came due in June 2013. BMO SER 425 ¶ 12.

CVS identifies no evidence in the record before the

14

1  Bankruptcy Court to refute BMO's showing that the promissory note
2  was worthless.  Instead, CVS simply repeats that "SK Foods sold
3  the Drum Line to CVS for $350,000, as reflected in the promissory
4  note. (ER pp. 27-42)."  Appellant's Brief at 3 & 17 (citing only
5  to the sale documents themselves).  In short, there was no
6  evidence in the record before the Bankruptcy Judge tending to
7  show that the promissory note had any value at all; rather, the
8  only evidence shows that it was worthless.

9       The promissory note, however, is just one side of the
10 "reasonably equivalent value" equation.  In order to meet the
11 second requirement of Section 548(a)(1), BMO must show that the
12 Drum Line itself is not worthless.  Otherwise, the worthless
13 promissory note would have been exchanged for the worthless Drum
14 Line, a thing of reasonably equivalent – zero – value.  BMO's
15 showing here, while not as definitive as its showing on the
16 promissory note, is sufficient to establish that the Drum Line
17 had some value at the time of the transfer.

18       The evidence in the record before the Bankruptcy Judge was
19 that the Drum Line was instrumental in SK Foods's business.  BMO
20 41 (Shondale Decl.) ¶ 5.  Moreover, once restored and made
21 operational, the Drum Line "would sell for USD $1,500,000 as a
22 used/reconditioned production line," after a $400,000
23 refurbishing, according to its manufacturer, K-Pack.  Bankr. ECF
24 No. 473 at BMO 89-90 (Declaration of Michael M. Carlson, Exh. B).
25 Even without any refurbishment, the Drum Line in its dismantled
26 state would still sell for "scrap."[10]  In addition, the evidence

---

[10] While CVS apparently equates "scrap" with "worthless," nothing
in the evidence indicates that the scrap value of the Drum Line

15

shows that whatever value the Drum Line has as "scrap," its value was higher just before it was transferred and shipped to New Zealand. The manufacturer stated that part of the decrease in value of the Drum Line was due to "shipping damage." Id., at BMO 100.

CVS relies on the declarations of F. Scott Salyer and Cary Collins as evidence that the Drum Line was "lack[ing] in value." However, both declarations were given on April 4, 2013 (ER 189 & 202), <u>after</u> the Bankruptcy Court granted the summary judgment motion. They were not part of the record before the Bankruptcy Court. Moreover, CVS has not identified anywhere in the record actually before the Bankruptcy Court, where the assertions made by Salyer and Collins could be found. Even if CVS is correct that the Bankruptcy Court had an obligation to examine the record in search of genuine factual disputes, CVS has not, even now, identified any such facts in the record.[11]

Accordingly, BMO has met its burden of showing that the Drum Line, having some value, was transferred to CVS for a bogus, worthless, unsecured promissory note.

### 2. SK Foods was insolvent.

BMO's remaining burden is to show that SK Foods was insolvent on the date the Drum Line was transferred to CVS. BMO met its burden through the declaration of Shondale Seymour, the CFO of SK Foods, who testified, among other things, that "By

---

is zero.

[11] In any event, neither self-serving declaration establishes that the Drum Line had <u>no</u> value. At best, they can be read to say that the Drum Line was worth its scrap value.

16

March 2008, it was obvious that SK Foods was insolvent." Bankr. ECF No. 473 at ¶ 13.

CVS has identified no evidence in the record before the Bankruptcy Court to put this fact in dispute. Instead, CVS points to its September 25, 2009 legal brief, which, it says, argues that Seymour is untrustworthy. However, arguments made in CVS's brief are not "evidence," and cannot overcome the evidentiary showing the BMO has made on this issue.

### C. Judgment for $1.5 million.

The Complaint seeks a judgment "for the fair market value of the Drum Line plus pre-judgment interest." ER 7 ¶ 39. Relying on the manufacturer's assertion of value (ECF No. 10-1 at 202), the Bankruptcy Judge granted BMO a judgment for $1.5 million.

Plaintiff objects to the $1.5 million valuation because it conflicts with the "sale" price of $350,000 as stated on the promissory note. Plaintiff's argument is absurd. The whole point of the adversary proceeding, as established by BMO, is that the promissory note was worthless, an instrument of the fraudulent transfer; there is no basis for relying upon it as the true valuation of the Drum Line. The manufacturer's valuation of $1.5 million, after refurbishment, is enough to base the judgment upon.

### V. CONCLUSION

CVS failed to do what was required to oppose BMO's motion for summary judgment. It sat on its hands when it was represented by counsel and had the opportunity to oppose, seek a continuance, or request leave to file a late opposition. The Bankruptcy Court accordingly did not abuse its discretion in

failing to grant CVS a continuance <u>sua sponte</u>.  Moreover, BMO's summary judgment motion before the Bankruptcy Judge was meritorious, and no evidence in the record before the Bankruptcy Court put any material fact genuinely in dispute.

Accordingly, the judgment of the Bankruptcy Court, granting summary judgment to BMO, is hereby **AFFIRMED**.

IT IS SO ORDERED.

DATED:  November 22, 2013.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

18